**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MURPHY A. JUNAID,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **C-11-226** |
| **John McHugh, Secretary,** | § | |
| **DEPARTMENT OF THE ARMY,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Now comes Plaintiff Murphy A. Junaid and files this Plaintiff's Response to Defendant's

Motion for Summary Judgment and would show as follows:

**1.      Preliminary Statement**

Plaintiff Murphy A. Junaid, a black African American former employee of the Department

of the Army, Corpus Christi Army Depot (CCAD), has filed this lawsuit requesting a trial de novo

regarding the complaints of discrimination and retaliation he asserted as a result of the all white

management team treating him less favorably than similarly situated white employees and retaliating

against him after he raised the discrimination complaints.

The Equal Employment Opportunity Commission (EEOC) procedures for Federal Sector

employees require a trial de novo of all the issues. 29 U.S.C. Section 1614.407  Therefore, the prior

decisions by the administrative judges submitted by Defendant in support of its motion for summary

judgment should not influence the Court or jury in this pending lawsuit.

Losing hearings in the administrative proceedings does not preclude a favorable finding by

a Judge or jury in Federal Court.  Previously, the undersigned attorney represented Carey Macon,

1

a similar African American former employee of the Corpus Christi Army Depot in his trial de novo after he also lost all his administrative hearings before the EEOC and the Merit Systems Protection Board (MSPB) administrative judges.  In that case, a Corpus Christi jury did not agree with the administrative judges and found the Army CCAD had discriminated and retaliated against Mr. Macon. *Carey Macon v. Louis Caldera, Secretary of the Army*, Civil Action No. C-98-11

2.      **Background of Plaintiff Murphy A. Junaid**

Plaintiff was born in Nigeria and came to the United States to obtain his education.  In 1980, he graduated with a Bachelor's degree in Industrial Engineering from the University of Oklahoma and in 1984 he was awarded a Master's degree in Economics from what is now know as Texas A&M - Commerce.  Soon after, he became a United States citizen. (Exhibit 1)

Plaintiff was employed by the Red River Army Depot from 1985 until 1989.  During that employment, his promotion from GS-9 to GS-11 was delayed for six weeks by the Division Chief. After failing to receive an explanation for the delay, when white employees received timely promotions, Plaintiff filed a complaint with the EEOC.  Plaintiff received the promotion, but was accused of threatening the Division Chief and proposed for termination.  During the EEOC and MSPB procedures, Plaintiff was offered six months severance pay to leave the Red River Army Depot, which he declined.  Plaintiff was terminated from employment with the Army. (Exhibit 2)

Plaintiff was again employed by the Army at the Corpus Christi Army Depot in November 2001, as an Industrial Engineering Economist/Project Engineer.  Plaintiff was qualified for the position as a result of holding two degrees, since the position requires both engineering skills and economic skills in performing the economic analysis.  (Exhibit 1)

Contrary to Defendant's contention, Plaintiff did disclose his employment at Red River Army Depot when he applied to work at CCAD.  (Exhibits 1 and 3)

Plaintiff's performance was outstanding and he had no issues with management until 2009 when the Division Chief left and was replaced by Acting Division Chief Ron Howe (white).   The problems continued with the selection of Gary Hogg (white) as the new Division Chief. (Exhibits 1 and 2)

**3.      Prior Protected Activity**

During the time period covered in this lawsuit, Plaintiff raised claims of discrimination and retaliation before the EEOC, MSPB, and Inspector General (IG).  Plaintiff initiated complaints with the EEOC on July 6, 2009, October 21, 2009, and December 28, 2009.  He also included complaints of discrimination and retaliation in the appeal of his termination to the MSPB.  Finally, Plaintiff requested investigations by the IG on several occasions, including February 13, 2009, July 16, 2009, August 6, 2009, and September 28, 2009.  (Defendant's Exhibit D, Exhibit 1 and 5)

**4.      Filing Cabinet Incident**

On or about March 26, 2009, Judith Ballard (white Administrative Support Assistant) and Gary Hogg (white Contractor) asked permission from Erik Lundgren (white officemate of Plaintiff) to put contractor filing cabinets in the office of Lundgren and Plaintiff.  Ballard and Hogg did not request permission from Plaintiff (black).  Plaintiff objected to the filing cabinets being in the office due to government regulations prohibiting the mixing of government and contractor files and because the contractors would have access to his office.  Plaintiff attempted to move the filing cabinets.  Although Ballard (GS-6) had no supervisory authority over Plaintiff (GS-12), she ordered Plaintiff to leave the filing cabinets in his office.  She attempted to come into Plaintiff's  office and

Plaintiff shut the door.  After the incident, Hogg falsely claimed in his written statement that Plaintiff pushed Ballard with his upper arm and forced the door into Ballard.  Ballard stated in her sworn statement that Plaintiff had not physically touched her or thrown anything at her.  Ballard reported the incident to Security, beginning the pattern of involving Security in matters with Plaintiff. (Exhibits 1, 2, 4, 6, 7 and 8)

On or about June 5, 2009, Ron Howe (white Acting Division Chief)  prepared a Proposed 14-day Suspension of Plaintiff for (1) Creating a Disturbance and (2) Discourtesy.  Howe had Security at the meeting where Howe gave Plaintiff the proposal letter. (Exhibit 2)

On or about July 24, 2009, Kresten Cook (white) issued a decision to suspend Plaintiff for 5 days. (Exhibit 1)

Plaintiff's complaint regarding this disciplinary action was not accepted for an EEOC administrative proceeding because he did not file within 45 days of the event.  This disciplinary action was also excluded from the list of incidents Plaintiff alleged were creating a hostile work environment, provided in a timely complaint filed by Plaintiff.  At the Fact Finding Conference, the investigator declined to accept detailed testimony regarding this disciplinary action from Plaintiff, asserting the claim was not timely.  However, after the Fact Finding Conference Defendant submitted documents regarding this disciplinary action to be included in the Report of Investigation. (Exhibit 9)  Therefore, including the filing cabinet incident in the administrative proceedings.  Since Defendant made the incident part of the administrative proceedings, Plaintiff should not be precluded from including the incident as part of the ongoing discrimination and retaliation he has raised in this lawsuit.

4

**A.     The complaint regarding the 5-day suspension is timely since it is part of the ongoing hostile work environment.**

In *National Railroad Corporation v. Morgan,* 536 U.S. 101 (2002), the United States Supreme Court determined a party must file a charge within a specific time after a discrete retaliatory or discriminatory act occurs or lose the ability to recover for it. The Court went on to differentiate a hostile work environment claim which, by its very nature, involves repeated conduct. The Court concluded the unlawful employment practice in a hostile work environment claim cannot be said to occur on any particular day, it occurs over a series of days or perhaps years. In direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts. Therefore, if one act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purpose of determining liability.

In accordance with *Morgan,* incidents constituting a hostile work environment are part of one unlawful employment practice and the employer may be liable for all acts that are part of this single claim. Since at least one act contributing to the claim or that is part of the hostile work environment occurred within the 45-day filing period, the entire time period of the hostile environment may be considered for the purpose of determining liability.

The United States Supreme Court has addressed the issue of harassment in *Burlington Industries Inc. v. Ellerth,* 118 S.Ct. 2257 (1998) and *Faragher v. City of Boca Raton,* 118 S.Ct. 2275 (1998). While *Ellerth* and *Faragher* specifically address the issue of sexual harassment, the holdings are applicable to all forms of harassment based on protected classes. In *Ellerth*, the Court held an employer is subject to vicarious liability to an employee victimized by a supervisor with immediate

or successively higher authority over the employee, but if no adverse action occurred, the employer has an affirmative defense.  According to these decisions, the relevant inquiry becomes whether an employee has been subjected to or even threatened with a tangible job detriment.  If it is found that an employee has suffered no tangible job detriment as a result of having refused to submit to harassing conduct, the question of whether an employer will be held liable will depend on whether an employer exercised reasonable care to prevent and promptly correct harassment in the work place, as well as whether an employee took advantage of the employer's preventive or corrective opportunities to remedy any alleged harassment.

In *Casiano v. AT&T Corporation,* 213 F.3d 278 (5th Cir. 2000), the Fifth Circuit provided a clear roadmap for determining liability in harassment cases under *Ellerth* and *Faragher*.  The first question asked: Is there a tangible employment action?  If the answer is no, the next question is: Were the actions severe or pervasive?  The burden of proof for this question requires a showing of severe conduct or pervasive conduct.  To prove severe conduct or pervasive conduct, the court considers all the circumstances, including the frequency of the discriminatory conduct, the severity, whether it is physically threatening or humiliating and whether it unreasonably interferes with an employee's work performance.

Plaintiff has provided evidence of both tangible employment actions and severe and repeated incidents resulting from discrimination and retaliation, beginning with the filing cabinet incident and continuing through his termination.  These incidents have affected Plaintiff's ability to perform his duties clearly showing he suffered harm from a hostile work environment.  Since the 5-day suspension is part of the ongoing hostile work environment, it should be included in this case.

**B.      Defendant opened the door for the 5-day suspension in the administrative proceedings.**

As stated previously, at the Fact Finding Conference, the investigator declined to accept detailed testimony regarding this disciplinary action from Plaintiff, contending the claim was not timely.  However, after the Fact Finding Conference Defendant submitted documents regarding this disciplinary action to be included in the Report of Investigation.  (Exhibit 9)  Therefore, including the filing cabinet incident in the administrative proceedings.  Since Defendant made the incident part of the administrative proceedings, Plaintiff should not be precluded from including the incident as part of the ongoing discrimination and retaliation he has raised in this lawsuit.

**C.      Similarly situated white employees were treated more favorably than Plaintiff during the filing cabinet incident.**

Plaintiff was treated less favorably than his white officemate when Ballard and Hogg asked permission from Lundgren to put the filing cabinets in the office he shared with Plaintiff, but did not ask permission from Plaintiff.

Plaintiff was treated less favorably than Ballard and Hogg, both white, when he was disciplined for creating a disturbance and discourtesy.  Ballard and Hogg had no supervisory authority over Plaintiff, yet they moved filing cabinets into his office without his permission.  When he attempted to move the filing cabinets out, Ballard came to Plaintiff's office and ordered him to stop, telling him he was acting like her grandchild.  Ballard tried to force herself into the office.  During the investigation of the incident, Hogg falsely stated Plaintiff hit Ballard, for which Hogg did not receive any punishment.  (Exhibits 1, 2, 4, 6, 7 and 8)

**D.    Defendant offers conflicting evidence in its motion as to who authorized the filing cabinets to be moved into Plaintiff's office proving pretext and precluding the granting of summary judgment.**

Defendant states at page 21 of its motion: "Mr. Howe, Plaintiff's supervisor at the time of the filing cabinet incident, testified that he authorized KBSI to move the filing cabinets during the mandatory March 26 home team meeting that Plaintiff did not attend."  However, there is no supporting evidence for this statement.

In the same paragraph of the motion, Defendant cites to Exhibit A, 243:21-244:7, testimony from Ballard in the Fact Finding Conference.  In the line following the cited testimony, Ballard is asked: "Who actually directed that the file cabinets be moved?"  She responds: "I was in and talking to the contractors and I asked Mr. Lundgren, the one that shares the office with him, if he had a problem with our moving the file cabinet by his desk and he said he did not have an issue with it."

At page 4 of the motion, Defendant cites to Plaintiff's testimony confirming Ballard directed the filing cabinet move, not Howe.

Lundgren sent an email to Plaintiff which contradicts Defendant's current claim that the filing cabinets were discussed at the Home Team Meeting.  Lundgren states Howe did not ask him about putting the filing cabinets in the office. (Exhibit 6)

In his statement provided during the investigation of the incident, Hogg states: "The incident happened about an hour after the south office spaces were rearranged by KBSI personnel with permission of Judi Ballard."  (Exhibit 8)

Defendant claims it has a legitimate non-discriminatory reason for its actions and Plaintiff cannot show pretext, because supervisor Howe authorized the move of the filing cabinets.  However, a preponderance of the evidence suggests Ballard authorized the move of the filing cabinets.  Since

8

she did not have such authority, Defendant has failed to meet it burden.

In a response to a motion for summary judgment, Plaintiff must show there is a genuine issue of material fact to defeat the motion. Plaintiff has presented sufficient evidence to show Ballard not Howe authorized the contractor to move the filing cabinets, proving Defendant's stated reason for its action is untrue and precluding the granting of summary judgment.

**5.     Promotion**

A review of the resumes shows Plaintiff is clearly more qualified than the selectee Gary Hogg for the position of Supervisory Industrial Engineer. The issue is whether the selection panel was motivated in not selecting Plaintiff because, being from Nigeria he speaks with a heavy accent. Therefore, judging him not on what he said but how he said it and allowing Plaintiff's national origin to influence the decision.

The evidence is undisputed that on January 23, 2009, the position of Supervisory Industrial Engineer was announced through an internal announcement and an external announcement. Plaintiff applied under the internal announcement, together with 10 other referrals. Gary Hogg applied under the external announcement, together with 2 other referrals. Ron Brychta applied under both announcements. Kresten Cook reannounced the position because he did not feel he had enough candidates the first time with adequate supervisory experience for a division level job.

If the candidates on the first referrals did not have adequate supervisory experience for a division level job, then Hogg did not have adequate supervisory experience for a division level job.

It is also undisputed, that on April 2, 2009, the position of Supervisory Industrial Engineer was reannounced through an internal announcement and an external announcement. In the second announcements, Cook added the requirement of one year of supervisory experience. Plaintiff applied

under the internal announcement, together with 5 other referrals. Hogg applied under the external

announcement, together with 3 other referrals.  Eunjin Lee and Ken Norman applied under both

announcements. There were less referrals in the second announcements than the first announcements

and the only new referral was Steven Connor.  The panel interviewed all 8 of the referrals in the

second announcements.  Cook picked the panel members.   Cook wrote the interview questions.

The selection decision was allegedly based on resumes, the answers to interview questions,

demonstrated supervisory experience, education, experience similar to CCAD work, and recent

educational or self-development type leadership activities.  The final three candidates were Connor,

Brychta and Hogg.  However, Connor and Brychta did not get good references, so Hogg was

selected.  (Defendant's Exhibit K)

Hogg's resume reflects (Defendant's Exhibit K):

1.    From August 15, 1984 to January 15, 1990 he was earning a BS at Texas A&M
        University.

2.    During this same time, he was employed as an Engineering Technician for Lodestone
        Consulting (August 20, 1985 to December 10, 1986) and an Engineering Intern at
        Texas Instruments (January 5, 1987 to December 21, 1988).

3.    From August 15, 1989 to January 15, 1992 he was earning a MS at Texas A&M
        University.

4      From January 15, 1990 to December 30, 1998, he was a Graduate Teaching Assistant
        and Graduate Research Assistant at Texas A&M University and a self-employed
        Independent Consultant.

5.    From January 17, 2000 to the time of his application in 2009, he was a Senior
        Systems Analyst and Project Manager at Knowledge Based Systems.

Plaintiff's resume reflects (Exhibit 3):

1.    He earned a BS in 1980 and a MS in 1984.

10

2.      From January 1, 1982 to April 10, 1985 he was a Construction Inspector and Project Engineer for Berek Construction Company.

3.      From April 15, 1985 to November 30, 1989 he was an Industrial Engineering Economist at Red River Army Depot.

4.      From December 1, 1989 to May 31, 1996 he was a self-employed Engineering Consultant.

5.      From August 1, 1996 to January 31, 1999 he was an Assistant Quality Control Coordinator at Unity Manufacturing Company.

6.      From February 1, 1999 to April 30, 2010 he was a Plant Industrial and Project Engineer for Inca Metals Products.

7.      From November 5, 2001 to the time of his application he was an Industrial Engineering Economist/Project Engineer at the Corpus Christi Army Depot.

Defendant argues Hogg is more qualified than Plaintiff because Hogg has a BS and MS in Engineering, compared to Plaintiff's BS in Engineering and MS in Economics. The position being filled was supervisor over Industrial Engineers, whose duties include both engineering responsibilities and economic analysis. Plaintiff's degrees, plus experience, made him more qualified for the position than Hogg. (Exhibit 1, 2, 3, and 4)

Previously, Cook claimed he was looking for things like teamwork, self development type educational experience beyond college, and demonstrated leadership and supervisory experience. Luis Salinas, one of the panel members, was looking for someone who was well versed in industrial engineering. Plaintiff was the only applicant holding the position of Industrial Engineer. (Exhibit 3) Hogg was a Senior Systems Analyst and Project Manager at the time of the interview. (Defendant's Exhibit K) During the interview process, Hogg claimed he was involved with a $20 million CIP program. (Defendant's Exhibit K) This is not true. Plaintiff was the engineer responsible for the $20 million CIP program and Edward Cooper was the backup engineer. (Exhibits

11

1, 2, 3 and 4)

Hogg was a contractor to the government and was not more qualified than the government engineers who applied for the position.  (Exhibits 1, 2, 3, 4, and Defendant's Exhibit K)  If the selection decision was based on resumes, the answers to interview questions, demonstrated supervisory experience, education, experience similar to CCAD work, and recent educational or self-development type leadership activities, Plaintiff is more qualified than Hogg.  If Cook was looking for things like teamwork, self development type educational experience beyond college, and demonstrated leadership and supervisory experience, Plaintiff was more qualified than Hogg.

**A.      The selection panel was influenced in its decision by Plaintiff's way of speaking resulting from his national origin.**

The Fifth Circuit, in conformity with the Supreme Court, has established the burden of proof for non-promotion cases.  The employee must prove he was clearly better qualified by showing the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the complaining employee for the job in question.  *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457-58 (2006; *Deines v. Tex. Dep't. Of Protective & Regulatory Servs.,* 164 F.3d 277, 280-81 (5th Cir. 1999).

The question is whether the selection panel's review of Plaintiff's superior qualifications was influenced by Plaintiff's manner of communication, because he speaks with a heavy accent, as a result of his national origin.

If the selection decision was based on resumes, the answers to interview questions, demonstrated supervisory experience, education, experience similar to CCAD work, and recent educational or self-development type leadership activities, Plaintiff is clearly more qualified than

12

Hogg.

Hogg's job experience does not support the claim he lead a team of 6-20 personnel for eleven years. As of May 28, 2009, Hogg had been employed by  Knowledge Based Systems Inc. for just over 9 years.  His resume states he "supervised in excess of 20 direct personnel at times" during his tenure with KBSI.  Hogg was a contractor and in that position he provided "direct engineering consulting and contract support to the Industrial Engineering Division."  He was assigned duties by the engineers, such as Eunjin Lee and Edward Cooper.  Hogg did not supervise the engineers or their projects nor were there in excess of 20 KBSI employees at CCAD.  (Defendant's Exhibit K, Exhibit 4)

According to panel member Salinas, during the interview, Hogg claimed he was involved with a $20 million CIP program, which Salinas felt was more impressive than Plaintiff's projects. However, a review of the resumes shows Plaintiff and Cooper were the engineers for the program and Hogg fabricated his involvement in the program.  (Defendant's Exhibit K, Exhibits 1-4)

According to Hogg's resume, the most recent education or certification he accomplished was in 1995.  (Defendant's Exhibit K) In contrast, Plaintiff had completed the Department of Defense Lean six (6) sigma Black Belt course in 2009 and the G.E. Aircraft Engines six (6) sigma Green Belt course in 2004. (Exhibits 1-4)  Plaintiff was the only engineer at CCAD to complete these programs and Cook had acknowledged this achievement as being important for CCAD.  (Exhibit 4) These courses taught Plaintiff how to restructure several shops at CCAD to make them work more efficiently. (Exhibit 4)  Plaintiff applied this training to the AH-64 Apache helicopter shop, UH-60 Black Hawk helicopter shop, CH-47 helicopter shop and OH-58 helicopter shop and was able to double the revenue produced by these shops.  (Exhibit 3)  If the selection panel was looking for

13

things like teamwork, self development type educational experience beyond college, and demonstrated leadership and supervisory experience, this training greatly exceeded anything Hogg has accomplished.

Cook minimized Plaintiff's accomplishments, such as the Grand Rapids, Michigan project while maximizing Hogg's work as a contractor. Cook gave Plaintiff credit for leadership in the Grand Rapids, Michigan project, but claimed Hogg's leadership at Texas Instrument was better. Plaintiff's role in the Grand Rapids, Michigan project supervising a team of engineers is a much greater accomplishment than  Hogg's roll as a leader when he was an intern at Texas Instrument during college in 1987-1988. (Defendant's Exhibit K, Exhibit 3)

As Cooper testifies, being a contractor does not train you to supervise government employees.  As a contractor you are not aware of the processes of the government, since you are given assignments and not creating the assignments. (Exhibit 4)

Plaintiff has a multitude of accomplishments, as listed in his resume, demonstrating his abilities as an Industrial Engineer and showing he was more qualified to move up one position to Supervisory Industrial Engineer than Hogg who was a contractor.

There is a genuine issue of material fact as to whether Defendant's stated reasons for selecting Hogg are legitimate or if Plaintiff's national origin was the cause of his non-selection.

**B.   The Agency's stated reasons for the panel's selection of Hogg over Plaintiff are false, proving discrimination.**

The use of a panel does not automatically provide a legitimate selection.  Cook picked the panel members, Salinas who had been promoted by Cook and Marc Gonzalez who was relatively new to CCAD.

14

None of the panelists used the same numbering system to rate the persons interviewed. (Defendant's Exhibit K)

Each of the panelists ranked the persons interviewed, although Gonzalez's top three (Brychta, Hogg, Connor) did not receive his highest points.   (Defendant's Exhibit K)

In the end it was Cook's top three who prevailed: Connor, Brychta and Hogg.  However, it is clear the interview process is flawed.  Even though Connor and Brychta had the interview skills to convince Cook they were the top candidates based on their records, when references were checked they were determined to be unacceptable performers in the workplace.   (Defendant's Exhibit K)

If a person has better communication skills, they can be more successful at an interview.  In addition, people who exaggerate their skills will often come out on top in an interview.  People similar to Plaintiff who speak English, but as a second language, are at a disadvantage in an interview.

In *Rhodes v. Guiberson Oil Tools,* 75 F.3rd 989 (5th Cir. 1996), the Fifth Circuit held a prima facie case, together with proof the reason offered by the employer for its action is untrue, "will often, perhaps usually, permit a finding of discrimination without additional evidence."   Thus, an employee's prima facie case, combined with sufficient evidence to find the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097, 2101 (2000).  Indeed, as the Court noted, the employer is in the best position to put forth the actual reason for its termination.  Mendacity is one piece of circumstantial evidence which ought to be considered. *Id.,* at 2102.  Rejection of the employer's proffered reasons will *permit* (emphasis the court's) the trier of fact to infer the ultimate fact of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742,

15

2749, 125 L.Ed.2d 407 (1993).

"The evidence necessary to support an inference of discrimination will vary from case to case. A trier of fact may be able to infer discrimination intent in an appropriate case from substantial evidence that the employer's proffered reasons are false." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996).

Since Defendant has failed to articulated a legitimate, nondiscriminatory reason for selecting Hogg over Plaintiff, the motion for summary judgment should be denied.

**6.      Home Team Meeting Incident**

On or about August 6, 2009, Ballard once again overstepped her authority as an Administrative Support Assistant. She deviated from the standard practice in the Division and requested Howe facilitate the Home Team Meeting, a standard practice about which Howe was also familiar. (Exhibit 10) Plaintiff was the designated facilitator pursuant to the written Division rotation list and as such requested to know why Howe was at the meeting. (Exhibits 1, 2, 4, and 11) Contrary to Defendant's claim at page 24 of its motion, the list was to provide for an Acting Division Chief when the Division Chief was gone. (Exhibit 11) Howe would not tell Plaintiff who sent him to the meeting. (Exhibits 1 and 2) Plaintiff requested assistance from Security to handle the matter. Ballard also intended to call Security, as she did during the filing cabinet incident. However, only Plaintiff was criticized for involving Security in this incident.

On or about September 23, 2009, Hogg issued a Proposed 30-day Suspension for (1) Creating a Disturbance and (2) Insubordination.

Defendant now claims at page 6 of its motion that Howe remained the unofficial Acting IED Chief as of the August 6, 2009 Home Team Meeting. That is not true. Hogg took over the position

August 3, 2009. (Exhibit 12)  If it were true, there would have been no need for Ballard to ask Howe to run the meeting in the absence of Tom Green (the name on the list to act while the Division Chief was absent.)  (Exhibits 10 and 11)

Hogg claims in the proposal of disciplinary action that Howe was directed by Cook to attend the Home Team Meeting.  This is contradictory to the statement of Ballard who said she invited Howe and the claim at page 6 of the motion that Howe went to the meeting because he had information.  Cook told Security it was acceptable for Howe to be at the meeting, but he did not claim he sent Howe to the meeting.  (Exhibit 2)

Hogg also claims in the proposal he requested Plaintiff to attend meetings on August 14, 2009 and August 21, 2009, which differed from his testimony at the Fact Finding Conference. (Exhibit 1)

Ballard (white) overstepped her authority by inviting Howe to facilitate the meeting, knowing established procedures had Plaintiff (black) as the Acting Division Chief.  The tension in the meeting began because Howe, due to Ballard, circumvented Plaintiff's authority and attempted to facilitate the meeting.  Just as Howe and Ballard had done in the past, Plaintiff sought help from Security.  It is doubtful Ballard would have been punished if she got to Security before Plaintiff on August 6, 2009.

Only Plaintiff was punished for what occurred at the meeting.  No disciplinary action was issued to Ballard (white) for interfering in matters which were not within her authority or for not respecting Junaid's authority over the meeting when she left without permission and slammed the door.  No disciplinary action was issued to Howe (white) for not respecting Plaintiff's authority over the meeting, when Plaintiff sought information and asked him to leave.

17

There are genuine issues of material fact within the Defendant's own motion, supported by this response, which preclude the granting of summary judgment. In addition, the numerous instances of contradictory testimony from the Defendant's witnesses require a credibility determination from the jury. Therefore, it is necessary for the jury to observe the testimony of the witnesses at a trial.

**A.     The Agency's stated reasons for the 14-day suspension are false, which supports a finding of discrimination.**

On or about September 23, 2009, Hogg issued a Proposed 30-day Suspension for (1) Creating a Disturbance and (2) Insubordination. On or about December 9, 2009, Cook issued a decision to suspend Plaintiff for 14 days.

First, Plaintiff disputes his behavior created a disturbance. If Judith Ballard had not overstepped her authority and invited Ron Howe to chair a meeting for which Plaintiff was the designated facilitator none of this would have happened. If Ron Howe had respected Plaintiff's authority as the Acting IED Chief at the Home Team Meeting and been honest with Plaintiff, explaining he had come at Ballard's request, none of this would have happened. If Howe had left the meeting when repeatedly requested by Plaintiff none of this would have happened.

Defendant claims Plaintiff's actions towards Howe, his previous supervisor and the former IED Acting Division Chief, were inappropriate. Contrary to Defendant's claim in the motion, at the time of the meeting, Howe was not a supervisor over Plaintiff. If Plaintiff was suppose to act differently towards Howe as a result of Howe being at a higher grade than Plaintiff, then the behavior of Judith Ballard should have been disciplined by the Defendant for her insubordination towards Plaintiff, who is a higher grade than Ballard.

Second, Plaintiff disputes his behavior with Gary Hogg was insubordinate.  There are established procedures for handling disciplinary actions with employees.  The way Hogg handled the matter did not provide Plaintiff with the due process to which he is entitled, i.e. having a Union representative of his choice, being allowed sufficient time to respond.

As state previously, in *Rhodes v. Guiberson Oil Tools,* 75 F.3rd 989 (5th Cir. 1996), the Fifth Circuit held a prima facie case, together with proof the reason offered by the employer for its action is untrue, "will often, perhaps usually, permit a finding of discrimination without additional evidence."  Thus, an employee's prima facie case, combined with sufficient evidence to find the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097, 2101 (2000).  Indeed, as the Court noted, the employer is in the best position to put forth the actual reason for its termination.  Mendacity is one piece of circumstantial evidence which ought to be considered.  *Id.,* at 2102.  Rejection of the employer's proffered reasons will *permit* (emphasis the court's) the trier of fact to infer the ultimate fact of intentional discrimination.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

"The evidence necessary to support an inference of discrimination will vary from case to case.  A trier of fact may be able to infer discrimination intent in an appropriate case from substantial evidence that the employer's proffered reasons are false."  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996).

Since Defendant has failed to articulated a legitimate, nondiscriminatory reason for the 14-day suspension, Defendant's motion should be denied.

**B.      The Agency's actions towards Plaintiff created a hostile work environment.**

For an employer to be liable for harassment, the conduct must be sufficiently severe or pervasive to alter the terms or conditions of the employee's employment and create a hostile or abusive work environment. *Nat's R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 n.10 (2002).

To determine whether the conduct rises to a level that alters the terms or conditions of an employee's employment, all the circumstances are considered, including: the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

The following incidents which are frequent, severe, humiliating, and interfered with Plaintiff's ability to perform his duties are proof of the hostile work environment:

March 26, 2009 filing cabinet incident caused by Ballard and Hogg and Security being called by Ballard.

June 5, 2009 proposed 14-day suspension and Security being called by Howe.

July 24, 2009 5-day suspension by Cook for the filing cabinet incident.

August 2009 cancellation of the regularly scheduled Home Team Meeting by Ballard.

August 6, 2009 disruption of the rescheduled Home Team Meeting by Howe and Ballard.

August 2009 actions of Hogg regarding meeting with Plaintiff about the Home Team Meeting incident, which resulted in a charge of insubordination against Plaintiff.

August 28, 2009 failure by Hogg to allow Plaintiff to have the Union representative of his choice at a disciplinary meeting.

September 23, 2009 proposed 30-day suspension by Hogg.

20

September 30, 2009 denial of a routine request for extension of time to respond to the proposed suspension.

December 4, 2009 request to relocate Plaintiff from his office during remodeling, but not requiring the same of his white office mate.

December 9, 2009 14-day suspension and Security being called by Cook.

## C.  The Agency's actions were in retaliation for Plaintiff's previous protected activity.

There are three elements an employee must prove to establish a prima facie case of retaliation: (1) statutorily protected activity; (2) adverse employment action; and (3) a causal link between the participation and the adverse employment action.  *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.)

"Close timing between an employee's protected activity and an adverse employment action against [her] may prove the 'causal connection' required to make out a *prima facie* case of retaliation. *Dennison v. AT&T Corp.*, 1998 WL 873032 (N.D. Tex. 1998) *quoting Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) *cert. denied*, 522 U.S. 948 (1977). There is no formula for the requisite amount of time between an employee's complaint and retaliatory action. *Gee*, 289 F.3d 342 n. 3 (5th Cir. 2002)(reversing summary judgment and citing the fact that plaintiff's non-selection followed her harassment complaint by two years did not entitle defendant to summary judgment).

The following outlines the events in this case, including the statutorily protected activity and adverse employment actions, which prove the causal connection as a result of close timing:

January 23, 2009 initial job posting.

February 2009 IG complaint against Kresten Cook, Ron Howe, and Gary Hogg for favorable treatment towards Hogg because work being done by government engineers was given to Hogg and the contractor KBSI.

March 26, 2009 filing cabinet incident caused by Ballard and Hogg and Security being called by Ballard.

April 2, 2009 new job posting.

June 5, 2009 proposed 14-day suspension and Security being called by Howe.

July 6, 2009 began EEOC complaint for non-selection of Plaintiff by Kresten Cook and selection of Gary Hogg. The EEOC administrative proceedings on this complaint ended on July 8, 2011.

July 16, 2009 IG complaint.

July 24, 2009 5-day suspension for the filing cabinet incident by Cook.

August 2009 cancellation of the regularly scheduled Home Team Meeting by Ballard.

August 6, 2009 disruption of the rescheduled Home Team Meeting by Howe and Ballard.

August 6, 2009 IG complaint.

August 2009 actions of Hogg regarding meeting with Plaintiff about the Home Team Meeting incident, which resulted in a charge of insubordination against Plaintiff.

August 28, 2009 failure by Hogg to allow Plaintiff to have the Union representative of his choice at a disciplinary meeting.

September 23, 2009 proposed 30-day suspension by Hogg.

September 28, 2009 IG complaint.

September 30, 2009 denial of a routine request for extension of time to respond to the

proposed suspension.

**October 21, 2009 EEOC complaint regarding 5-day suspension and proposed 14-day suspension.**

December 4, 2009 request to relocate Plaintiff from his office during remodeling, but not requiring the same of his white officemate.

December 9, 2009 14-day suspension and Security being called by Cook.

**December 28, 2009 began EEOC complaint regarding 14-day suspension and hostile work environment. The EEOC administrative proceedings on this complaint ended on July 8, 2011.**

## 7.    Termination

Plaintiff's EEOC complaints were still pending when on or about September 17, 2010, Hogg sent an email requesting volunteers for acting duties on the rotational schedule. (Exhibit 13)  Since Plaintiff had been disciplined the last time he performed the acting duties, which was the subject of a pending EEOC complaint, to avoid any further difficulties Plaintiff declined to volunteer. (Exhibit 13)

On or about October 4, 2010, Hogg sent an email with a schedule of roles for FY11.  Plaintiff was assigned Action Register duty for October 2010, even though Plaintiff had not volunteered and others were not required to perform this duty.  (Exhibit 14)

In May 2010, when Plaintiff and his Union representative met with Hogg about acting duties, Hogg falsely claimed everyone in IED had to perform the duties.  So, the union told Plaintiff it was required.  However, when the roster was released, not all the IED employees were on the roster. (Exhibits 1, 2, and 14)

On or about October 4, 2010, Plaintiff again declined to volunteer for the duty.  (Exhibit 1)

Plaintiff did not attend the October 6, 2010, Home Team Meeting, because he was meeting with other employees regarding his work responsibilities.  Hogg falsely claims he left the Home Team Meeting shortly before 8:00 a.m. on October 6, 2010, to speak with Plaintiff in Plaintiff's office and returned a few minutes later to the Home Team Meeting.

Four people testify they were meeting with Plaintiff in their office location, which is away from Plaintiff's office location, at the time Hogg claims he was speaking with Plaintiff.  (Exhibits 15, 16, 17, and 18)      The Home Team Meetings  are not mandatory and other employees have not been disciplined for missing the meetings.  (Exhibits 1 and 4)

On or about October 6, 2010, Hogg sent an email to Plaintiff requesting to meet with Plaintiff at 2:00 p.m. on October 7, 2010.  Plaintiff became upset when he received the email, because he knew he had not met with Hogg that morning and Hogg was fabricating an incident.  (Exhibit 1)

Hogg came to Plaintiff's office at approximately 11:13 a.m. on October 7, 2010, just as Plaintiff was leaving to go to the restroom.  Once again, Hogg fabricated an incident, claiming he tried to speak with Plaintiff and Plaintiff was insubordinate in leaving the office.  Plaintiff was on his way to the restroom and denies Hogg tried to stop him so they could talk.  When Plaintiff returned to his office, Hogg was gone.  (Exhibit 1)

Plaintiff's frustration with the ongoing EEOC problems and the helplessness in being subjected to a false accusation by Hogg, resulted in Plaintiff sending two emails to Hogg.  (Exhibit 1)      Plaintiff complied with Hogg's request to meet at approximately 2:00 p.m. on October 7, 2010**.**

Plaintiff did not attend the October 20, 2010, Home Team Meeting.  On or about October 25,

24

2010, Hogg met with Plaintiff regarding Plaintiff not attending the October 20, 2010 meeting. (Exhibit 1)

Plaintiff was terminated effective March 14, 2011 and appealed the termination to the MSPB on April 7, 2011, including claims for discrimination and retaliation.  (Exhibit 1)

## A.    Hogg fabricated an incident to support terminating Plaintiff.

Plaintiff was not in his office the morning of October 6, 2010, and he has four employees who confirm he was with them at the time Hogg claims he was with Plaintiff.  The only support Hogg has is the memorandum for the record he created.

In addition to being held to a different standard than white employees (e.g., ignoring Plaintiff's request not to be included on the acting roster, placing Plaintiff on the acting roster when others were excused, requiring Plaintiff to attend the Home Team Meetings when others were excused), Plaintiff was once again the subject of a total fabrication by Hogg.

No matter how much evidence is presented to dispute Hogg's claims, the white management team always believes him over Plaintiff.  Beginning with Hogg's false claim that Plaintiff hit Ballard, when Ballard's sworn testimony proves Plaintiff did not hit her and continuing through Hogg's claims he met with Plaintiff the morning of October 6, 2010.  Four people plus Plaintiff testify Plaintiff was in another location before, during, and after the time Hogg claims he met with Plaintiff. The white management team ignored these people and believed Hogg.

In addition to Plaintiff, Hogg fabricated incidents with another minority employee Hamilton Pabon, who also filed an EEOC charge because of Hogg's actions.   (Exhibit 19)

The evidence presented supports a finding that Plaintiff was treated less favorably than similarly situated white employees.  For that reason, Defendant's motion for summary judgment

should be denied.

**B.    Plaintiff's was participating in protected activity at the time of his proposed removal.**

Defendant incorrectly claims there is not a causal connection between Plaintiff's protected activity and the proposal for termination. On July 6, 2010, Plaintiff began the EEOC complaint regarding the selection of Hogg  for the supervisor position.   On September 21, 2010, the Administrative Judge denied Defendant's motion for summary judgment on the complaint.  At 10:00 a.m., on October 4, 2010 the Administrative Judge conducted a conference call with the parties to set the hearing.  Approximately two hours later, Hogg sent the email with the roster - ignoring that Plaintiff had declined the invitation to volunteer to be on the roster and assigning Plaintiff duties for the month of October.

The Administrative Judge set the hearing on the non-selection case for November 18, 2010, and on November 17, 2010, Hogg proposed Plaintiff for termination.

There is more than sufficient evidence to show a causal connection between Plaintiff's protected activity and the termination.  Therefore, Defendant's motion for summary judgment should be denied.

**8.    Summary Judgment Standard**

Summary Judgment is appropriate only if  "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56 (c), Federal Rules of Civil Procedure.  The party seeking summary judgment bears an exacting "burden of showing that there is no actual dispute as to any material fact in the case."  *United States Steel Corporation v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975).

In determining whether the movant has met his burden, the pleadings, depositions, answers

to interrogatories, and admissions on file, together with any affidavits, must demonstrate there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902, 904 (5th Cir. 1985). Fact questions are considered with deference to the non-movant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). For purposes of summary judgment, all the facts and inferences are viewed from the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). The Supreme Court in *Celotex Corporation v. Myrtle Nell Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986) clearly set out standards for Rule 56 motions. Under the *Celotex* standard, the respondent or non-moving party is not required to prove its case in a Motion for Summary Judgment. The non-moving party must only show that there are genuine material facts in controversy.

To defeat a motion for summary judgment, the non-movant must set forth specific facts sufficient to establish that there is a genuine issue of material fact. A mere allegation of a genuine issue is not sufficient. But, if the evidence shows that a reasonable jury could return a verdict for the non-moving party, then the dispute is genuine. *Hibernia National Bank v. Carner,* 997 F.2d 94, 98 (5th Cir. 1993). The evidence must be such that if introduced at trial, it would suffice to prevent a directed verdict against the non-movant. *Duffy v. Leading Edge Products, Inc.,* 44 F.3rd 308, 312 (5th Cir. 1995). If on the other hand, a rational trier of fact, based on the record as a whole, could not find for the non-moving party, then there is no genuine issue for trial. *Amoco Production Co. v. Horwell Energy, Inc.,* 969 F.2d 147, 147-48 (5th Cir. 1992).

Defendant's motion for summary judgment must be denied because the summary judgment evidence taken as a whole in a light most favorable to Plaintiff: (1) creates a fact issue as to whether

27

Defendant's stated reasons were what actually motivated Defendant and (2) creates a reasonable inference that retaliation, race, color, and/or national origin were determinate factors in the actions taken by Defendant against Plaintiff, which created a hostile work environment.

**9.     Statement of Disputed Material Facts**

There are genuine issues of material fact as to the following which precludes the granting of summary judgment:

      A.    Whether Plaintiff was treated less favorably than similarly situated white employees during the filing cabinet incident, Home Team Meeting incident, and termination incident.

      B.    Whether the conflicting evidence presented by Defendant disputes the reasons for its actions were legitimate and non-discriminatory.

      C.    Whether Plaintiff participated in prior protected activity.

      D.    Whether there is a causal connection between Plaintiff's prior protected activity and the actions of Defendant.

      E.    Whether Hogg made false claims against Plaintiff, including that Plaintiff hit Ballard, Howe was still acting as IED Division Chief during the August 6, 2009 Home Team Meeting incident, and Hogg  met with Plaintiff the morning of October 6, 2010 during the time of the Home Team Meeting.

**10.     There is sufficient evidence to proceed to trial**

All that is necessary to permit the case to proceed is evidence sufficient to raise an issue of fact as to whether Defendant proffered reason was a pretext for retaliation or discrimination. See *Tomka v. Seiler* Corp., 66 F.3d 1295, 1309 (2d Cir.1995); *Fisher v. Vassar College*, 114 F.3d 1332, 1337-38 (2d Cir.1997) (en banc), cert. denied, --- U.S. ----, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Plaintiff has presented sufficient evidence to prove a prima facie case, dispute Defendant's proffered reasons for its actions, and support a finding of pretext.  Plaintiff has well exceeded what is required

to defeat a motion for summary judgment.

In addition, discrimination and retaliation cases involve proving the intent of the employer in taking the actions against the employee. Defendant has stated its intent and Plaintiff has disputed that intent. The intent of the employer is a factually disputed matter precluding summary judgment. See, e.g., *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1309 (2d Cir.1995).

**11.    Conclusion**

When reviewing discrimination and retaliation claims, the courts should examine the "totality of the circumstances" giving rise to the claims. *See Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1524 (M.D.Fla. 1991)(A holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes); *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3rd 668, 675 (7th Cir. 1993); *Burns v. McGregor Electronics Indus.,* 955 F.2d 559, 565, 57 F.E.P. 1373 (8th Cir. 1992); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1484, 54 F.E.P. 184 (3rd Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on the entirety of its performance, . . .  A discrimination analysis must concentrate not only on individual incidents but on the overall scenario.")

It is well established that only a "very minimal showing" is required for an employee  to satisfy the requirements of the prima facie case. *Harvey v. R.O. Evans Pontiac-GMC Co.,* 1999 WL 820388, 5 (N.D. Tex.); *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir. 1996); *Amburgey v. Corhart Refractories Corp., Inc.,* 936 F. 2d 805, 811 (5th Cir. 1991).  Under the *McDonnell Douglas* framework, Plaintiff must prove the necessary elements "by a preponderance of the evidence. . . Even if Plaintiff has not succeeded in meeting this burden of proof, if he has raised a

genuine issue of material fact, he should survive summary judgment." *Amburgey,* 936 F.2d at 811,

*quoting McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 92 S.Ct. 1817, 1824, 36 L.Ed.2d

668, 677 (1973).

In *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640-41 (5th Cir. 1985),

the Court held:

> [i]n general, summary judgment is an inappropriate tool for resolving claims of
> employment discrimination, which involve nebulous questions of motivation and
> intent . . . Often motivation and intent can only be proved through circumstantial
> evidence; determinations regarding motivation and intent depend on complicated
> inferences from the evidence and are therefore peculiarly within the province of the
> factfinder.

Plaintiff agrees with the Fifth Circuit and urges the Court to allow this case to proceed to trial

allowing the jury to hear the testimony of the decision makers and other witnesses as to the disputed

issues of material fact raised in the motion for summary judgment and this response, in order to

properly judge their credibility.

Wherefore, premises considered, Plaintiff requests the Court deny Defendant's motion for

summary judgment in that Plaintiff has raised genuine issues of material fact precluding the granting

of summary judgment and for such other and further relief to which Plaintiff is entitled.

Respectfully submitted,
LAW OFFICES OF
GAUL AND DUMONT
924 Camaron Street
San Antonio, Texas 78212
(210) 225-0685
(210) 320-3445 - Fax

By:  *s/ Malinda A. Gaul*
MALINDA A. GAUL
State Bar #08239800
Attorney for Murphy Junaid

30

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 15th day of May, 2012, I electronically filed the above and foregoing

Plaintiff's Response to Defendant's Motion for Summary Judgment with the Clerk of Court using

the CM/ECF system which will send notification of such filing to:

Charles Wendlandt
Assistant United States Attorney
800 N. Shoreline, Suite 500
Corpus Christi, Texas 78401

**/s/ Malinda A. Gaul**
MALINDA A. GAUL

31

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **MURPHY A. JUNAID,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **C-11-226** |
| **John McHugh, Secretary,** | § | |
| **DEPARTMENT OF THE ARMY,** | § | |
| **Defendant.** | § | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Came on to be heard Defendant's Motion for Summary Judgment and Plaintiff's response.

Upon review of the motion and response, the Court finds it does not have merit and should

be DENIED.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is

DENIED.

Signed this _____ day of _____, 2012.


_____
UNITED STATES DISTRICT JUDGE

32