IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MURPHY A. JUNAID,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | C-11-226 |
| **John McHugh, Secretary,** | § | |
| **DEPARTMENT OF THE ARMY,** | § | |
| Defendant. | § | |

## DECLARATION OF MURPHY A. JUNAID

"My name is Murphy A. Junaid. I am the Plaintiff in the above styled and numbered cause of action. I am at least 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts stated in the attached pages, which are all true and correct.

Pursuant to 28 U.S.C. Section 1746, I declare, certify, verify, and state under penalty of perjury the information in the attached pages is within my personal knowledge and is true and correct."

Executed on the __12_____ day of _____May_____, 2012.


_Murphy A. Junaid___
MURPHY A. JUNAID

I, Murphy A. Junaid, filed this lawsuit due to the discrimination and retaliation I received when I was employed by the Department of the Army at the Corpus Christi Army Depot. I was born in Nigeria and have become a United States citizen. I graduated from the University of Oklahoma in 1980 with a BS degree in Engineering. I also received a MS degree in Economics in 1984 from what is now known as Texas A & M - Commerce.

From 1985 to 1989, I was employed as an engineer at the Red River Army Depot. I filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) when my supervisor delayed my promotion. I received the promotion because I filed the EEOC complaint, but my supervisor claimed I threatened him. I was proposed for removal and appealed my termination, instead of accepting the Army's settlement proposal. I was removed from my position. When I applied for a position at the Corpus Christi Army Depot, I listed the Red River Army Depot position on my resume.

I was hired at the Corpus Christi Army Depot in 2001 as an Industrial Engineering Economist/Project Engineer, which involves skills in both engineering and economics.

On January 23, 2009, the position of Supervisory Industrial Engineer was announced and I applied under the internal announcement. Gary Hogg an employee with contractor Knowledge Based System Inc. (KBSI) applied under the external announcement, but the position was not filled from this announcement.

Kresten Cook - Director of Engineering Services (DES) and Ron Howe - DES Senior Engineer began awarding contracts without competitive bids and diverting government funds to Gary Hogg and KBSI, a contractor, for work being done by me and other government employees. On February 13, 2009 and again on July 16, 2009, I filed complaints with the Inspector General (IG) regarding this waste, fraud, and abuse because work was being taken

away from government employees and given to Gary Hogg and the contractors at KBSI. I submitted documents to support the claims I made to the IG.

On March 26, 2009, Gary Hogg of KBSI and Judith Ballard, Administrative Support Assistant, moved contractor filing cabinets into my government office, without my permission. Although they did ask permission from Erik Lundgren, my white officemate. Contractor files are supposed to be maintained separately from government files. By having the contractor filing cabinets in my office, the contractor would have access to my office at all times. When I attempted to move the filing cabinets out of my office, Judith Ballard ordered me to stop, insulted me, and called Security. Gary Hogg falsely accused me of hitting Ms. Ballard with the door, which Ms. Ballard told Security did not happen.

On April 2, 2009, the position of Supervisory Industrial Engineer was reannounced. I applied again and so did Mr. Hogg, who was eventually selected for the position. I was more qualified for the position of Supervisory Industrial Engineer because I was in the position of Industrial Engineer and had supervisory experience due to the rotation system we used in IED. Mr. Hogg was only a contractor who supported the work of the engineers.

On July 6, 2009, I filed an EEOC complaint because I was not selected for the position.

On July 24, 2009, I was suspended for 5 days because of the filing cabinet issue.

In August 2009, Judith Ballard cancelled a regularly scheduled Home Team Meeting, even though due to Mr. Hogg's absence I was the acting IED chief in accordance with the established written rotation policy.

On August 6, 2009, Ms. Ballard tried to prevent me from facilitating the rescheduled Home Team Meeting, by inviting Mr. Howe to facilitate. Ron Howe, as the former acting IED

chief, knew the protocol for facilitating the Home Team Meetings and was aware of the written rotation policy.

Mr. Howe now claims he was planning to present information at the August 6, 2009 Home Team Meeting, but he did not tell me that when I asked him why he was at the meeting. Ms. Ballard asserts she invited Mr. Howe, but Mr. Hogg says Mr. Howe came at the request of Kresten Cook. Mr. Cook does not claim he told Mr. Howe to go to the meeting, but when Security was called he told them it was alright for Mr. Howe to be at the meeting.

According to the memorandum for record between the CCAD management and Union officials, I was acting as the Industrial Engineering Division Chief in the absence of the newly installed Division Chief and had the authority and power of that position.

On August 6, 2009, I filed an additional complaint with the IG because Mr. Cook was improperly using the professional engineering (PE) certification with his name. He stopped using the PE designation when told to by the Texas Board of Professional Engineers in Austin, Texas.

Mr. Hogg claims he tried to meet with me several times about the Home Team Meeting, but he repeatedly scheduled meetings when I was not available - even after I told him.

When Mr. Hogg proposed me for a 30-day suspension on September 23, 2009, I went to the EEOC on October 21, 2009. I tried to file a complaint for ongoing discrimination and retaliation, which was creating a hostile work environment, but the EEOC said I was not timely for the 5-day suspension and the 30-day suspension was only a proposal. I did file an EEOC complaint on December 28, 2009, when I was given a 14-day suspension on December 9, 2009.

On September 17, 2010, Mr. Hogg sent an email requesting volunteers for the rotational schedule and roster for IED for FY11 to perform acting duties. Due to the disciplinary action I

received as a result of the last time I served in the acting position, I declined in writing to volunteer.

On October 4, 2010, Mr. Hogg sent an email with a schedule of PBL Roles for FY11. I was assigned Action Register duty for October 2010, even though I had not volunteered and others were not required to perform this duty. In May 2010, Mr. Hogg told the Union everyone was required to do the roster duties, but that is not true. Not all the employees in IED were included on the roster.

On October 4, 2010, I again declined in writing to volunteer for the duty.

I did not attend the October 6, 2010, Home Team Meeting (PBL), because I was meeting with other employees regarding work responsibilities. Other IED employees have failed to attend Home Team Meetings and received no discipline.

Mr. Hogg claims he left the Home Team Meeting shortly before 8:00 a.m. on October 6, 2010, to speak with me in my office and returned a few minutes later to the Home Team Meeting.

That did not happen and four people have testified they were meeting with me in their office location, which is away from my office location, at the time Mr. Hogg claims he was speaking with me.

The Home Team Meetings are not mandatory and other employees have not been disciplined for missing the meetings. That is why we have a rotating roster. If someone is not available, the next person on the list handles the duties.

On October 6, 2010, Mr. Hogg sent an email to me requesting to meet at 2:00 p.m. on October 7, 2010. I was very upset when Mr. Hogg falsely claimed he had met with me that morning at 8:00 a.m. I sent him an email telling him I did not know what he was talking about

and I did not want to meet with him because of the way he has treated me. He had already falsely claimed I hit Ms. Ballard and now he was falsely claiming he had met with me that morning. I was very upset about the treatment I was receiving, which I knew was leading to my termination.

      Mr. Hogg came to my office at approximately 11:13 a.m. on October 7, 2010, just as I was leaving to go to the restroom. I did not know why he was at my office when I left to go to the restroom. When I came back, he was gone.

      I met with Mr. Hogg and my union representative, at approximately 2:00 p.m. on October 7, 2010.

      I did not attend the October 20, 2010, Home Team Meeting (PBL).

      On October 25, 2010, Mr. Hogg met with me regarding me not attending the October 20, 2010 meeting.

      I was removed from my position effective March 14, 2011. I filed an appeal to the Merit Systems Protection Board.