# SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN)

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Corpus Christi Army Depot, Corpus Christi, TX | 2010-11-03 | 8:00am | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Junaid, Murphy A. | | GS-12 |

**8. ORGANIZATION OR ADDRESS**
Directorate of Engineering Services, Industrial Engineering Division (IED)

**9.**

I, Murphy A. Junaid, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

Background: I graduated from the University of Oklahoma in December 1980, with a Bachelor's degree in Industrial Engineering. I worked briefly in Doraville, Atlanta for Cutler Hammer, a division of Eaton Corporation and left to pursue graduate studies at Texas A&M, Commerce, TX, in Economics. I got my Master's degree in Economics in 1984 and soon after became a US citizen. I was employed at Red River Army Depot (RRAD) in Texarkana, TX in 1985, as an Industrial Engineer training from GS-7 through 11 under the Depot Equipment Division Chief Mr. Joe B. Alexander, who later became the director of Engineering Services. My promotion from GS-9 to GS-11 was delayed for six weeks by Mr. Alexander. I questioned Mr. Alexander for the reason or reasons why my promotion was delayed while others employed after me were promoted without any delay. Mr. Alexander had no response for me, so I filed an EEO complaint against Mr. Alexander.

During that period, I witnessed Mr. Alexander kiss one of the Engineering female staff and reported him. Soon after, Mr. Alexander reported that I threatened him. During the case deliberation, I was offered six months severance pay and requested to leave the depot. My Attorney and I turned down the request stating that I did nothing wrong to be removed from my position. The judge went with the depot and I left Texarkana for Dallas in 1990. A few years later, Mr. Alexander retired from his position.
I left Texarkana to work in Garland and Lewisville (Dallas) between 1990 and 2000. I applied for employment with the Army once again and was employed here at Corpus Christi Army Depot (CCAD) in November 2001.

Chronology of events:
I took over the directorate of Mfg/Proc production Shot Peen, Non-Destructive Testing (NDT) shops, the directorate of Quality Assurance Material Processing Engineering Laboratory, the directorate of Power Train UH-60, AH-64, OH-58 and CH-47 transmission shops and the directorate of Components Landing Gear disassembly, Assembly, Test cell, Rotor Control and Rotor Head/Cargo shops from the previous engineer who was about to retire, Mr. Wendell Beckton.

In FY 2001 soon after my employment, I took half of Mr. Edward Cooper's, one of the IED engineers, project for forty ($40) million dollars and prepared an Economics Analysis which was validated by AMCOM in Jan 2003 for a project titled Flight Critical Penetrate and Inspection Facility Testing (FCPIT) MCA PFN 55449 for equipment and building for twenty million dollars ($20m).

In FY04, Congress appropriated the budget for the DoD and CCAD received her portion of the budget. The IED Chief during that period was Mr. Kelly Jackson (now of ARDECOM). Mr. Jackson informed every engineer with projects that the funding for our projects was received and that we should prepare equipment specifications for all of our machines. The breakdown for the twenty ($20) million dollars equipment and building project acquisition was as follows:

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | |
|---|---|---|
| | maj  MJ | PAGE 1 OF 6 PAGES |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF ___ TAKEN AT ___ DATED ___

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

DA FORM 2823, NOV 2006    PREVIOUS EDITIONS ARE OBSOLETE    APD PE v1.01ES

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF: Murphy A. Junaid    TAKEN AT: CCAD, C.C. TX    DATED: 2010/11/03

9. STATEMENT (Continued)

I.
a. Equipment Design Cost $489,484
b. Equipment Acquisition Cost $8,504,745
   Sub-total $8,994,229

II.
a. Facility Design Cost $816,593
b. Facility Construction Cost $10,641,521
   Sub-total $11,458,114 for a grand total of $20,452,343

Unfortunately, Mr. Jackson informed me that the equipment acquisition funding was approved, but the building funding was not. So I proceeded with my equipment specifications and site preparation for all the seventy (70) machines for the Material Engineering Lab (8), the Shot Peen (16), the Paint shop ((7) Mr. Cooper's), NDT shop (15), Magnetic Particle Inspection (2) plus conveyor and the enclosure for the twenty-two (22) old NDT manual conveyor machines as a backup (att.-1&2).

The team members for these projects consisted of Mr. David Garcia the Q&A Material Engineer, Mr. Bryan Manning the Q&A specialist, Mr. Tom Finley the Tool & Die fixture Engineer, Mr. Frank Munoz the Shot Peen/NDT shop supervisor, and me representing the IED engineering office.

Mr. Jackson did NOT tell me that the project equipment design funding was going to be diverted to another use even though the funding was needed for the design of all equipment to be procured; just as for the other engineers equipment design funding. The denial of the design funding created problems for some of the equipment procured, to the point where I had to request for new funding to modify the equipment after installation that delayed the certification and equipment release for production for several months. I found out later that the design money was diverted to another use while I was struggling to procure all these machines. I asked Mr. Jackson, the IED Chief, why I was not informed the design funding was appropriated and diverted.

Mr. Jackson said he discussed it with the Director Mr. Cook and Mr. Cook and Colonel Budney signed off on it and sent me a copy of the memo. I told Mr. Jackson that diverting a Congress appropriated fund specified for a particular project when the fund was absolutely needed without getting approval from Congress was against Federal regulation. Mr. Jackson said no and that both Mr. Cook and Colonel Budney signed off on it; so I kept the copy of the memo handy for future reference (att.-3&4).

Around November 2009, Mr. Jackson got a new job position with the ARDECOM. Mr. Cook picked Mr. Ron Howe, a former Tool & Die GS-12 engineer who was just then selected as an NSPS YF engineer, into Mr. Cook's office to head the IED office temporarily. Normally, the Head of an organization requests members of the staff to rotate in the Chief's office for temporary periods until the position is filled. Mr. Cook had done this in the past after Mr. Mo Asaad was selected as the Director of Mfg/Proc production director. A few members of the IED staff were allowed to act temporarily until the position was filled. At this moment Mr. Braddy, the Deputy Commander for Support Operations, is rotating the DES director's position with the current four DES division Chiefs to act as the director of Engineering Services before the position is announced for competition. But Mr. Cook failed to do so.

During the six to eight months of Mr. Howe's IED temporary acting Chief tour of duty, Ms. Judi Ballard the IED administrative assistant informed the Knowledge Based System Incorporated (KBSI) contractor staff to put three file cabinets into Mr. Erik Lundgren and my office. Ms. Ballard went through the trouble to ask Mr. Lundgren whether it was alright to locate those three cabinets into our office, but completely ignored me. The cabinets were located into our office while I was not in the office. During this time, Mr. Gary Hogg was the supervisor for the KBSI contractor working under the IED engineering staff.

When I came to the office the following day, I asked Mr. Hogg who approved the relocation of the KBSI contractor's cabinets into our (Government) office. Mr. Hogg answered that Judi told him to. I went to ask Ms. Ballard in her office. Ms. Ballard shrugged me off and told me to go and speak with Mr. Howe, the IED Chief. I went to Mr. Howe's office to ask him, but he was not at his desk.

INITIALS OF PERSON MAKING STATEMENT
MAJ

PAGE 2 OF 6 PAGES

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF Murphy A Junaid    TAKEN AT CCAD, C.C. TX    DATED 2010/11/03

9. STATEMENT (Continued)

When my office mate Mr. Lundgren arrived in the office, I asked him if anyone, Ms. Ballard or Mr. Howe, had informed him of the relocation of the cabinets to our office. Mr. Lundgren said no one had, with an email statement from Mr. Lundgren (att.-5&6). Mixing of contractor and Government property is against regulation, as we were told and requested as COR to include in any specification we prepare for acquisition for contracting.

Ms. Ballard did not say she told KBSI to relocate the cabinets into our office, because as a GS-5 administrative assistant she does not have the authority, but she did. Mr. Howe did not ask Mr. Lundgren or me if KBSI could relocate those cabinets into our office, as he stated during the EEO investigation. So, I took one of the three cabinets out of our office and moved it outside our office into another room.

As I was moving the cabinet out, Ms. Ballard walked about 100 to 200 feet from her office to ours and opened the door in abruptly. She said, Murphy you are acting like my young grandchild. I asked her to move on. She said, I'll go and speak with Mr. Cook and I told her to go ahead and so she left. At the EEOC investigation, I learned she called security.

A few days later, Mr. Howe prepared a questionnaire and asked those who were present to answer those questions (att.-7). A few weeks later, Mr. Howe prepared a memorandum to propose a four week suspension without pay to give to me. Prior to my arrival with the AFGE Union President Mr. Joe Gonzales, there were two security officers standing and waiting with Mr. Marc Gonzalez the Equipment Engineering and maintenance division Chief along with Ms. Norris Ortiz the civilian personnel staff member inside the IED Chief's office. After Mr. Gonzales and I sat down, he asked Mr. Howe what the security officers and Mr. Gonzalez were doing in the room. Mr. Howe said Ms. Norris Ortiz requested that they be present. Mr. Gonzales the Union President asked both the security officers and Mr. Marc Gonzalez to leave and they all did. But the security officers were told to stay in the next room where Ms. Ballard was sitting.

Mr. Hogg's and two KBSI contractor employees lied in their statements to Mr. Howe's questionnaire, claiming I hit Ms. Ballard when she came to our office while I was moving one of the cabinets outside (att.-8,9&10). Meanwhile, Ms. Ballard's statement to security and to the same questionnaire was that I never touched her (att.-11). I was suspended for a week without pay by Mr. Cook as a result of Mr. Hogg and two members of the KBSI staff falsified testimony that I hit Ms. Ballard(att.-12). I filed an EEO case as a result.

Soon after, I filed a report with the AMCOM Inspector General about Mr. Cook's diversion of the FCPIT project equipment design money and a few questionable contracts to KBSI for jobs that the IED engineers were paid to do (Prepare Economic Analysis, Write equipment specification and Prepare Layout for shop equipment Processing). I reported to the IG that Mr. Cook was using the PE insignia for several years, at least five to eight years, without being registered (att.-13,14,14-A,14-B&14-C). The AMCOM IG came from Huntsville to interview Mr. Cook (he told us himself in our meeting) and thus found that I had reported him.

During this period, some of the IED engineers and I applied for the IED Chief open position and the referral list was submitted to Mr. Cook. Mr. Cook cancelled the original referral list and refined the announcement by adding a few more statements to the announcement. Meanwhile, those who were referred in the first list were flabbergasted and wondered why. Mr. Cook was one of the interviewer Board members with two others consisting of Mr. Luis Salinas and Mr. Marc Gonzalez. Normally, it is inappropriate for an official who is making the selection to be among the interviewers at the same time. I am the only IED staff member who made the first referral list with BSIE and Master's in Economics and the only Engineer with a GE Lean Green and DoD Black belts certification. My performance ratings for the last eight years prior to the job announcement and selection were excellent. I am the only IED engineer with a waiver for the Fundamental of Engineering from the Texas Board of Professional Engineers (TBPE). My accomplishments at CCAD are well known to everyone here at CCAD. Why I was NOT selected for the IED Chief position was beyond my grasp. Since I was not selected, I amended my original EEO case to include retaliation and discrimination.

INITIALS OF PERSON MAKING STATEMENT
MAJ    PAGE 3 OF 6 PAGES

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF: Murphy A. Junaid     TAKEN AT: CCAD, C.C. TX     DATED: 2010/11/03

9. STATEMENT (Continued)

I have acted as the Division Chief as well as the Director of Engineering Services at RRAD during my tour at the depot. I have Federal Government training in Production, Management, Technical Review and Value Engineering among other training courses during my fourteen years in the Federal service. Here at CCAD, I was never recognized nor given any award for any of my projects installed here at the depot while 'white' engineers were given recognition for bare service with their picture shown on CCAD newsletter for simply awarding contract or performing theoretical services.

A well known American saying: "If you work hard and play by the rules; you will be successful." I did, but that wasn't the case for me. I am an African American from Nigeria with a stigma termed "double minority".

Mr. Hogg's selection to the position of the IED Chief started on 3 August 2009 while Mr. Howe's temporary position ended the last day of July 2009 (att.-15). Mr. Hogg was in supervisor's training during the first week of August. The PBL meeting was every Wednesday. The first meeting was Wednesday 5 August 2009. Ms. Ballard took the initiative as if she was the IED Chief and cancelled the Wednesday meeting and re-scheduled it until Thursday afternoon. As done in every office, each supervisor makes a list of volunteers to act on his/her behalf when he/she is absent or not available. The IED office roster list made by Mr. Howe himself listed Mr. Tom Green as the acting Chief in the absence of Mr. Hogg. Mr. Green was absent during the first week of August; so I was next in line for the IED Chief on the roster list (att.-16). As Mr. Cooper testified during the EEO investigation and supported by Mr. Howe's testimony during the same period, Ms. Ballard knew I was next in line to act as the IED Chief on the roster list so she cancelled the meeting for Wednesday as if she was the IED Chief. She asked Mr. Cooper if he would like to head the meeting and Mr. Cooper told her no, soon after she cancelled the meeting.

Later, Ms. Ballard called Mr. Howe in his office to come and head the meeting after postponing the meeting until Thursday 6 August 2009 and Mr. Howe concurred (EEO testimony).

On 6 August 2009, Mr. Howe came to the IED meeting and sat in the IED Chief's chair as if he was still the IED Chief. When I came inside the meeting conference room, I requested Mr. Howe to move from the IED Chief chair. Mr. Howe asked me why and I told him that I am the acting IED Chief as the roster listed. Mr. Howe vacated the seat and moved to the next chair. I asked Mr. Howe three times as to who invited him to the IED staff meeting. Mr. Howe said no one but that he had some safety topics to discuss with IED staff. I told Mr. Howe that you should have informed me as the acting IED Chief or any of the IED staff members that you were coming to our meeting. Since you did not, please excuse yourself from our meeting. Mr. Howe refused.
I left the meeting for a few minutes to call security for assistance. A few minutes later, a security Bryan officer and Sergeant Rodriguez knocked on the conference room door. I opened the door and got outside the room to speak with them. As I was speaking with the Sergeant, another security officer came along with a note in his hand. The security officer handed the note to the Sergeant and said that Mr. Cook gave him a phone number to give to the Sergeant and that he, Mr. Cook sent Mr. Howe to the IED meeting. The sergeant asked me if I was satisfied and I said yes. All three security officers left and I went inside the meeting room to conclude the meeting. Mr. Howe stayed in the meeting until the meeting was over.

At the following week's meeting, Mr. Hogg came to the meeting. He said he was informed of an incident that happened the previous week and that he was not going to tolerate such action. He proposed a questionnaire just like the one Mr. Howe proposed during the cabinet incident and gave it to those who were present to answer (att.-17). A few weeks later, he proposed to suspend me for four weeks without pay (att.-18).

The Union representative Mr. Ruben Arreola prepared questionnaires and requested civilian personnel ask the security officers and those present in the meeting to answer, but civilian personnel refused the Union request (att.-19). The Union requested an extension of time to prepare a response to the proposal; civilian personnel refused the request again (att.-20). The Union and I refused to respond to the proposal citing violation of several regulations. I was later suspended for two weeks without pay (att.-21)

INITIALS OF PERSON MAKING STATEMENT
MAJ

PAGE 4 OF 6 PAGES

DA FORM 2823, NOV 2006     APD PE v1.01ES

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF: Murphy A. Junaid    TAKEN AT: CCAD, C.C. TX    DATED: 2010/11/03

9. STATEMENT (Continued)

During the EEO investigation, Mr. Howe did NOT testify that he was sent to the IED meeting by Mr. Cook. That meant Mr. Cook lied when he sent a note to the security Sergeant that he sent Mr. Howe to the IED staff meeting. Mr. Howe testified that Ms. Ballard invited him to come and head the IED meeting even though Mr. Howe is neither in the DES chain of Command nor a member of the IED staff. During the EEO investigation, Ms. Ballard herself testified that she invited Mr. Howe to the IED meeting and thus disputed Mr. Cook's statement (att-22). So, I was punished for calling the CCAD security officer for assistance when as the acting IED Chief I have the authority vested in that position to do so. So I filed another EEO complaint against Mr. Hogg, who proposed the suspension and Mr. Cook who signed and acted on the suspension.

I provided the Economic Analysis with all the data used by the Architecture and Engineering (A&E) contractor for the new building 8 currently under construction at CCAD. The shops that I support (Landing Gear, Rotor Control, Rotor Head/Cargo and the Transmission assembly) are to be the first phase to transfer to the new building after construction. Mr. Cook and Mr. Howe informed Mr. Hogg who was just then recently hired by CCAD to remove me from the shops project, re-assign those shops to three different engineers (Mr. Fred Canales, Mr. Mel Avila and Mr. Richard Medrano), and award several thousand dollars in contracts to KBSI to assist in the project; which I had handled by myself for the last thirteen years at CCAD. I was later re-assigned to where Mr. Avila was previously supporting (Metal Spray, Engine NDT and the Welding) shops to include the shot peen and the component NDT shops (att.-23).

Two years ago, the IED planned to renovate its office, joining the central and the south end together. Soon after Mr. Howe took over as the temporary IED Chief, the process started moving faster. The north end of the IED office was to be renovated first with the plan already on track. Soon after the cabinet incident, Mr. Hogg took over. A few weeks later, Mr. Hogg came up with a plan to relocate me from my office in the south end section and move me somewhere else in the central location even though the north end of the IED office was to be renovated first and the central and south end (where I sit) of the IED office were to follow after. As soon as Mr. Hogg sent the layout to all the IED staff, I requested him for a reason why I am being moved. He answered that he was trying to relocate engineers working together in the same room. That was not the case, every engineer works his/her project singlehandedly and not together. Soon after, I went back to the EEO office and amended my complaint to include 'Hostile Work Environment' (att.-24,25&26).

During the month of September 2010, Mr. Hogg requested volunteers for acting as the IED Chief when he is absent. I responded back to him that I was NOT interested (att.-27). On Oct 1 2010, Mr. Hogg made a list of volunteers, included my name, and sent it to all the IED engineers, even though my initial response to him was negative (att.-28). It is said that 'You fool me once, shame on you, but if you fool me twice, shame on me.' I refused to volunteer for the same position that I was suspended for once and only a fool will make the same mistake twice and refused to attend the meeting to participate.

INITIALS OF PERSON MAKING STATEMENT: MAJ    PAGE 5 OF 6 PAGES

DA FORM 2823, NOV 2006    APD PE v1.01ES

| STATEMENT OF | Murphy A. Junaid | TAKEN AT | CCAD, C.C. TX | DATED | 2010/11/03 |

9. STATEMENT (Continued)

In conclusion:

Mr. Cook:

a. Diverted my project (FCPIT) design funding to another use while it was needed
b. Falsified his record using the PE insignia in front of his name while he was not registered
c. Mr. Cook lied when he sent a note to the CCAD security Sergeant that he sent Mr. Howe to the IED meeting
d. Mr. Cook awarded several thousand dollars of questionable contracts to KBSI for jobs that IED staff were paid thousands of dollars in salary to do
e. Mr. Cook punished me for calling the CCAD security for assistance while acting as the IED Chief
f. Mr. Cook discriminated and retaliated against me for reporting him to the AMCOM IG and EEOC
g. Mr. Cook destroyed my Federal job advancement with the three weeks suspension


Mr. Hogg:

a. Mr. Hogg lied against me when he said I hit Ms. Ballard when I did not to be suspended for one week
b. Mr. Hogg discriminated against me for calling the CCAD security for assistance while acting as the IED Chief in his behalf
c. Ms. Ballard testified that I never touched her to dispute Mr. Hogg's statement

Respectfully submitted,

Murphy A. Junaid
Industrial Project Engineer, GS-12
BSIE, Ms. Economics

**AFFIDAVIT**

I, Murphy A. Junaid, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 6. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

(Signature of Person Making Statement)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 03 day of November, 2010 at Corpus Christi Army Depot, Corpus Christi, TX

ORGANIZATION OR ADDRESS

(Signature of Person Administering Oath)

(Typed Name of Person Administering Oath)

ORGANIZATION OR ADDRESS

(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT: MAJ

PAGE 6 OF 6 PAGES

DA FORM 2823, NOV 2006   APD PE v1.01ES