IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MURPHY A. JUNAID, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | C-11-226 |
| John McHugh, Secretary, | § | |
| DEPARTMENT OF THE ARMY, | § | |
| Defendant. | § | |

**JOINT PRETRIAL ORDER**

1.    **APPEARANCE OF COUNSEL**

**List each party, its counsel, and counsel's address and telephone number in separate paragraphs.**

A.    Plaintiff Murphy A. Junaid
Malinda A. Gaul
Gaul and Dumont
924 Camaron Street
San Antonio, Texas 78212
(210) 225-0685

B.    Defendant John McHugh, Secretary
Department of the Army

Jimmy A. Rodriguez
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9532
Attorney-in-Charge for Defendant

Charles Wendlandt
Assistant United States Attorney
800 N. Shoreline, Suite 500
Corpus Christi, Texas 78401
(361) 903-7920

## 2.    STATEMENT OF THE CASE

**Give a brief statement of the case, one that the judge could read to the jury panel for an introduction to the facts and parties; include names, dates, and places.**

Plaintiff Mr. Murphy A. Junaid filed this lawsuit on July 8, 2011, pursuant to Title VII of the Civil Rights Act of 1964. Mr. Junaid was born in Nigeria, came to the United States to obtain his education, and became a United States citizen.   Mr. Junaid was employed by the Army at the Corpus Christi Army Depot in November 2001, as an Industrial Engineering Economist/Project Engineer. In March 2011, Mr. Junaid was removed from federal service for insubordination, discourtesy towards a supervisor, and making a false statement.  Mr. Junaid claims that the Army's disciplinary actions, including two suspensions and his removal, and his nonselection for a supervisory position, were motivated by animus toward his race/color (Black) and national origin (African American), and in retaliation for participation in prior protected activity. Defendant denies these claims and asserts that its actions, including Mr. Junaid's removal, were for legitimate, non-discriminatory reasons, including Mr. Junaid's on-the-job misconduct and the fact that Mr. Hogg was the most qualified applicant for the supervisory position.

## 3.    JURISDICTION

**Briefly specify the jurisdiction of the subject matter and the parties.  If there is an unresolved jurisdictional question, state it.**

Plaintiff Murphy A. Junaid brings this action against Defendant, John McHugh, Secretary, Department of the Army, to remedy discrimination on the basis of race/color (black) and national origin (African American), in the terms, conditions, and privileges of employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*    This is also an action for retaliation for previous protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* Injunctive and declaratory relief, damages, and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(f) and (g) and  42 U.S.C. §1981a.

## 4.    MOTIONS

**List pending motions.**

The parties intend to file motions in limine prior to trial.

5.      **CONTENTIONS OF THE PARTIES**

**State concisely in separate paragraphs each party's claims.**

A.      Plaintiff:     Plaintiff Murphy A. Junaid claims discrimination on the basis of race/color (black) and national origin (African American) and retaliation for previous protected activity under Title VII, when Defendant failed to promote him over a less qualified white applicant and when the all white management team disciplined and eventually terminated him from employment.

B.      Defendant: The Army did not subject Mr. Junaid to race/color or national origin discrimination or retaliation in not selecting Mr. Junaid for the IED Chief position and for imposing disciplinary actions. The undisputed evidence of record shows that the Army selected Gary Hogg as the IED chief because he was the most qualified candidate. Moreover, the evidence shows that the Army's disciplinary actions were not motivated by discrimination or retaliation but, rather, by Plaintiff's insubordinate, combative behavior towards his supervisors and refusal to attend certain meetings as directed by his supervisor. It was only after efforts to address his unreasonable refusal to follow his supervisor's directives and his repeated discourtesy proved unsuccessful that the Army properly removed him from federal service.

6.      **ADMISSIONS OF FACT**

List all facts that require no proof.

1.      Beginning November 5, 2001, Mr. Junaid was employed at Corpus Christi Army Depot ("CCAD"), Texas, as an Industrial Engineer, GS-0896-12, in the Industrial Engineering Division ("IED") within the Directorate of Engineering Services.

2.      Mr. Ron Howe (Caucasian) was Acting IED Chief, and Mr. Junaid's first-line supervisor from January 18, 2009, until Mr. Gary Hogg (Caucasian) reported for duty as the new IED Chief.

3.      At all times relevant, Mr. Junaid's second-line supervisor was Mr. Kresten Cook (Caucasian), Director, Directorate of Engineering Services.

4.      On June 5, 2009, Mr. Howe proposed the Army impose a 14-day suspension on Mr. Junaid for creating a disturbance and for discourtesy related to the March 26th incident involving filing cabinets in the office shared by Mr. Junaid and Mr. Lundgren.

5.      On July 24, 2009, Mr. Cook, the deciding official for the suspension, notified Mr. Junaid of his decision to reduce Mr. Howe's proposal to a 5-days' suspension.

6.      On August 27, 2009, the Assistant Deputy Commander for Maintenance Operations denied Mr. Junaid's request for reduction of the 5-day suspension, finding Mr. Cook's decision proper.

7.     The Army issued a vacancy announcement for a Supervisory Industrial Engineer ("IED Chief") and later convened a three member panel to make the selection.  Mr. Cook  was the selecting official and panel chairperson.  He chose as panel members Mr. Marc Gonzales (Hispanic), Chief, Equipment Engineering and Management Division, and Mr. Luis Salinas (Hispanic) Chief, Facilities Management Division.

8.     Mr. Cook notified Mr. Junaid on July 1, 2009, that Mr. Gary Hogg had been selected for the IED Chief position.

9.     On September 23, 2009, Mr. Hogg proposed the Army impose a 30-day suspension on Mr. Junaid for insubordination and creating a disturbance related to the August 6th incident during which Mr. Junaid ordered Mr. Howe to leave a home team meeting.

10.     On December 9, 2009, Security was present when Mr. Cook notified Mr. Junaid of his decision to mitigate Mr. Hogg's proposal and reduce Mr. Junaid's suspension for the August 6 incident to 14 days.

11.     On November 17, 2010, Mr. Hogg proposed Mr. Junaid's removal from federal service based upon Mr. Junaid's insubordination, discourtesy towards a supervisor, and false statement related to the events that occurred October 4-7, 2010.

12.     On December 17, 2010, Mr. William Braddy, Deputy Commander for Production at CCAD and the deciding official on Mr. Junaid's removal, conducted a reply meeting with Mr. Junaid and his union representative.

13.     On March 14, 2011, Mr. Braddy issued his decision, finding that all of the charges and specifications were substantiated by a preponderance of the evidence and that removal was the appropriate penalty for the misconduct.

14.     On July 6, 2009, Mr. Junaid initiated contact with the EEO office regarding his nonselection.

15.     On October 21, 2009, Mr. Junaid initiated contact with the EEO office regarding his 5-day suspension issued July 27, 2009, and his notice of proposed 14-day suspension based upon the August 6 incident.

16.     On December 28, 2009, Plaintiff initiated EEO contact regarding the imposed 14–day suspension.

17.     Plaintiff's employment was terminated effective March 14, 2011.

4

## 7.    CONTESTED ISSUES OF FACT

**List all material facts in controversy**

First is a dispute over facts surrounding the incident on March 26, 2009, where Mr. Junaid removed filing cabinets from the office he shared with Eric Lundgren, which resulted in a five day suspension.

Second is a dispute over facts regarding the method in which Junaid presided at a home team meeting, which resulted in a fourteen-day suspension.

Third is a dispute over whether Junaid was clearly more qualified than Gary Hogg for the IED Chief position.

Fourth is a dispute over facts regarding CCAD's decision to remove Junaid from federal service and the facts set forth as the basis for the removal decision.

## 8.    AGREED PROPOSITIONS OF LAW

**List the legal propositions that are not in dispute.**

To establish a prima facie case of race/color and/or national origin discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co*., 574 F.3d 253, 259 (5th Cir. 2009).

In accordance with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 ( 1973), the Fifth Circuit has stated the test in Title VII discrimination and retaliation claims as follows:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) [that] the [defendant] employer's reason is a pretext or (2) that the [defendant] employer's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic.
> *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411-12 (5th Cir. 2007).

The employee must prove he was clearly better qualified by showing the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the complaining employee for the job in question. *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457-58 (2006); *Deines v. Tex. Dep't. Of Protective &*

5

*Regulatory Servs.,* 164 F.3d 277, 280-81 (5th Cir. 1999).

There are three elements an employee must prove to establish a prima facie case of retaliation: (1) statutorily protected activity; (2) adverse employment action; and (3) a causal link between the participation and the adverse employment action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.)

 "Close timing between an employee's protected activity and an adverse employment action against [her] may prove the 'causal connection' required to make out a *prima facie* case of retaliation. *Dennison v. AT&T Corp.*, 1998 WL 873032 (N.D. Tex. 1998) *quoting Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir. 1997) *cert. denied*, 522 U.S. 948 (1977). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Swanson*, 110 F.3d at 1188.

9.   **CONTESTED PROPOSITIONS OF LAW**

**State briefly the unresolved questions of law, with authorities to support each.**

Whether Plaintiff's complaints to the Inspector General are protected activity for the purposes of establishing a retaliation claim under Title VII.

Defendant: Complaints to the Inspector General are not "protected activity" for Title VII purposes because Title VII only applies to complaints concerning discrimination because of race, sex, national origin, religion, or color. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001); *Woodworth v. Shinseki*, 447 Fed. Appx. 255, 257 n.2 (2d Cir.2011) (noting that "to the extent [plaintiff] claims it was his complaint to the IG, rather than to the EEO, that caused [a reprimand], Title VII does not provide a remedy") .

10.   **EXHIBITS**

A.   **On a form similar to the one provided by the clerk, each party will attach two lists of all exhibits expected to be offered and will make the exhibits available for examination by opposing counsel.  All documentary exhibits must be exchanged before trial, except for rebuttal exhibits or those whose use cannot be anticipated.**

B.   **A party requiring authentication of an exhibit must notify the offering counsel in writing within 7 days after the exhibit is listed and made available; failure to object in advance of the trial in writing concedes authenticity.**

C.   **Within reason, other objections to admissibility of exhibits must be made at least 7 days before trial; the Court will be notified in writing of disputes, with copies of the disputed exhibit and authority.**

D.    Parties must mark their exhibits to include the date and case number on each.

E.    At the trial, the first step will be the offer and receipt in evidence of exhibits.

11.   **WITNESSES**

A.    List the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony. Include the qualifications of expert witnesses; these will be used to qualify the expert at trial.

B.    Include:

      "If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses."

See attached witness lists.

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

12.   **SETTLEMENT**

**State that all settlement efforts have been exhausted, that the case cannot be settled, and that it will have to be tried.**

All settlement efforts have been exhausted, the case cannot be settled, and it will have to be tried.

13.   **TRIAL**

A.    Probable length of trial; and

B.    Logistical problems, including availability of witnesses, out-of-state people, bulky exhibits, and demonstrations.

The trial should take four days.

14.    **ATTACHMENTS**

**Include these required attachments:**

A.    **For a jury trial:**

      (1)    **Proposed questions for the voir dire examination.**

      (2)    **Proposed charge, including instructions, definitions, and special interrogatories, with authority.**

**Date:** _____    _____
                                                      **UNITED STATES DISTRICT JUDGE**

**Approved:**

**Date:  July 12, 2012**    *s/ Malinda A. Gaul*_____
                                        **Attorney-in-Charge, Plaintiff**

**Date:  July 12, 2012**    *s/  Jimmy A. Rodriguez*_____
                                        **Attorney-in-Charge, Defendant**